Good morning to all of you and thank you for accommodating my trial schedule today. My name is Dale Gallipo and I'm appearing on behalf of the appellant Michael Easley. And from the appellant's perspective, if you take all the appellant's facts as true and take all reasonable inferences therefrom, Officer Macias shot a person without identifying the object that the person threw as a gun and Mr. Easley threw the object two to four seconds before he was shot without warning from behind. Well let's let's talk about what's undisputed and it obviously has to be material as well. There can always be disputes in the facts but they have to be material. In this situation, my understanding is Mr. Easley was fleeing on foot to a residential neighborhood after the vehicle that he was in that had tinted windows, they failed to yield to the officers that lit up the car, they failed to yield, he jumped out of the car while carrying an object with the officer stated with a handgun-like profile while chasing the officer, they said saw contours of a gun, the other officer said to him, gun, and it's undisputed that Mr. Easley made some sort of turning motion and it's where it becomes disputed as he says he was throwing the gun. It's undisputed that he had a gun. He says he was throwing the if you look at those undisputed facts, why would it not, why would not a reasonable officer have the right to shoot? Because the fact that he's throwing the gun or he's turning to shoot him, what does it really matter? Because either he's dead or he's not dead. You know, you always have to decide whether someone's throwing a gun or just turning to shoot you. Well first of all, I don't think all the facts you stated are are undisputed. I think the most important disputed fact is whether he recognized the object as a gun. He did not. Well, it's undisputed that it was a gun, right? But under the analysis of Graham and other cases, you have to look at what the officer knew at the time, not what he learned after the fact. Well, but not, okay, you don't judge it 20-20. Right. Hindsight. But what would clearly put an officer on notice after they'd believed that they see something, there's a motion, it's undisputed there's some sort of motion in that back area. The defendant, well, both the plaintiff and the officer, there's no dispute that there was a turning. But what the dispute is, your client says he was throwing the gun and the officer thought he was going to shoot him. Well, first of all, I think it's undisputed from the record that you couldn't shoot him for merely running away. Exactly. I agree with you on that. And I think it is disputed as to whether there was a turn. Mr. Easley specifically said he never turned towards the officer. In fact, the officer claimed that the object that he saw, although he didn't know what it was, was in Mr. Easley's right hand. Mr. Easley never had an object in his right hand, according to his testimony. And most importantly, from our perspective, he threw what we now know to be a gun or the object forward and away from the officer, probably over 70 feet away from him. Let me ask you this, Mr. Guilipo, because, you know, we recognize that this is unsummary judgment, so all the facts have to be construed in your client's favor. Right. But the facts that I focus on is, I don't think it's material whether the officer actually saw the gun or not. It is undisputed that while Mr. Easley was fleeing, he was holding his waistband in such a way that caused the officer to reasonably believe that he had a gun. Right. That's undisputed. I think it is undisputed that he was holding his waistband in some respects and the officer believed it was possible he had a gun. Right. So one officer shouted, gun. So that was kind of their mindset as they're pursuing him. And then the point at which you say there's a material factual dispute is when Mr. Easley reached into his waistband, pulls out a gun and tosses it. Right. That's right. That's the point you're focusing on. Well, that's only part of it, because what's more important, I think, Judge Wynn, is let's just say hypothetically that the officer saw the gun in his hand and recognized it as a gun and told him to drop it. And he did. And two to four seconds later, he was shot. Well, let's let's let's focus on this fact. I mean, I don't from this record, it's hard to tell whether the officer actually even saw a gun or not. But to me, is it possible to be running? I'm assuming running fairly fast, reach into your waistband and toss a gun 50 to 70 feet away without some movement of the upper body that would lead a reasonable officer to believe that he was about to be shot. And I think that's a question, Judge Wynn, for him to have thrown at that distance. I'm with you that he had to have he had to throw it with some force away from the officer. The problem that I have But why isn't that enough then to grant summary judgment? Because the question really isn't whether the officer actually saw the gun, whether a reasonable officer in this officer's shoes could have perceived that he was essentially in danger, right? The reason is, is because, and I think this is the testimony of Officer Macias and the two police practice experts, one who testified, one who supplied a declaration or report, that it's known that people that have guns are going to run from officers and try to throw the guns. I know you as having a background in criminal law know that that's something that that people do, right? But put your head on just in terms of what was seen at that time. Right. Does, yes, some people might throw the guns, some people shoot them. You know, it's also known that people that have guns use them to shoot, right? So does it, does a reasonable officer have to decide in a split second whether someone's throwing it or going to shoot them with it? And if you're wrong, you're dead, right? No, the issue, this is what, that's the issue. See, this wasn't a split second. This was two to four seconds. Let's take four seconds. Let's give easily every reasonable inference that I can hardly stand up in four seconds, much less make a decision. I want to show you how long four seconds is. So objects tossed. Now you have the shots. So that's the They could have had special interrogatories. We just feel as a matter of law, I get what you're saying. I get what you're saying about the split second decisions, but the facts of this case are such that he tossed an object. And I understand what Judge Wynn is saying, two to four seconds before he was shot. So at the time he was shot, let's assume that the jury decided that the, the officer... Let's say we agree with you. Let's say we agree with you. Okay. Is then, is then the clearly, and let's say we published on that, is then the clearly established law for officers that are out in the field that when they try to stop someone, they run, and there's the, and the conversation is gun, think you see a gun, and then something, there's some sort of motion to get, is then the clearly established law that officers cannot shoot under those circumstances, because that... If the officer believes it's a gun coming in his direction at the time of the shots, I agree with you. I agree with you. Officers have a right to defend... Well, the officer said that he, I mean, the officer doesn't... Well, the problem... Your theory for this case... Pardon? Your theory for this case in terms of what you claim the factual disputes are is that the officer, this is what you're going to argue to the jury, the officer saw the object leave Mr. Easley's hand... Right. And then shoots him in the back for no reason. To the... No. I wouldn't say no reason. I don't... Well, I... He overreacted. You know, he saw something thrown... And so let me see if that's borne out by the factual record. Okay. Your client, Mr. Easley, testified that he tossed the gun and then two to, I recall from the record, two to four seconds after the object leaves his hand was when he felt the first shot. That is correct. So that gets pretty close to the... Well, if we give him the four seconds... Second, because when you see something, sometimes it takes a second for you to kind of absorb the situation. That is true. There could be a half a second or second. I get that. But if you give him the four seconds, the other thing is that a jury might conclude that the officer did not see an object in his hand at the time he fired. And the only reason I drew the example of someone identifying an object as a gun... But how could... Okay, you're saying... No, we can't say that on How could the jury conclude that he didn't have a gun in his hand when your client's testimony is he had a gun in his hand and he was throwing it but not shooting the officer? How could they conclude that? I think the questions the jury would have if they were given special interrogatories would be something like, number one, did the officer identify the object as a gun before the shooting, yes or no? Did the officer see the object in his hands at the time he fired the shot or had the officer seen that he had already thrown the object away from him before he fired the shot? If the jury finds those factual disputes in favor of the plaintiff, hypothetically, I don't know what the jury would decide, then I would submit this is a case that has... Those facts have to be decided. And Judge Hatter, who's a fine, experienced judge, for whatever reason, really was taking inferences in favor of the defense when he decided this. Deciding certain evidence maybe was more credible. Well, I would be inclined to agree with you that there was some weighing that went on that we're not going to do. We're going to look at all inferences in terms of your client and those what we said. But I do have a question right now. Do you want to reserve some time for rebuttal? I think I would like to. Okay. Why don't you do that? I appreciate that. Okay. Thank you. Thank you very much. Good morning. Good morning, Your Honors. Alana Rotter for the appellee officer of CS. As you've been discussing, we're here on qualified immunity, the clearly established prong, where it is plaintiff's burden to come up with a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. What does the record show regarding whether Officer Macias actually saw the profile of the gun? I'm looking at the district court's order and it said Officer Macias testified he did not shoot easily earlier because easily was not a threat until Officer Macias saw the profile of the gun on the right side of Mr. Easley's body. Is that what Officer Macias ultimately testified to or is there some dispute in the record about whether he even saw a gun at all? Officer Macias testified I saw the gun come out. He started to blade towards me. I saw the profile of the gun on the side of his face. That's Officer Macias' testimony. When other officers responded to the scene, then Officer Macias' reaction is I think he saw, he threw something. So does the fact that he testified on the one hand that he saw the profile of a gun but then tells other officers on the scene he threw something instead of identifying it as a gun, does that create an issue of credibility to get this case at least to the jury? I don't think so, Your Honor. Why not? Because if you think about what you were focusing on a few minutes ago in terms of the undisputed facts, the fact is that Officer Macias, that Easley was gripping his waistband, which Officer Macias and his partner both interpreted as looking like he was holding a gun so they believe he's armed. Mr. Easley admits that as he's running, he in fact pulls out a gun. Officer Macias is running 10 to 20 feet behind him. It's dark. It's a fast chase. Whether he was 100% sure that object was a gun. What did the other partner say? Gun. The other partner isn't running a chase. So Macias heard his other partner say gun. Yes. So that's in his mind. That's in his mind. And that's undisputed that the other partner said gun. It isn't. And there's a video of the beginning of this event which is in the record, which we submitted to the court. And you can see that Easley is in fact grabbing his waistband when he gets out of the car. Easley admits that he was. He says the gun was in his pocket not in his hand. But I don't think there are credibility disputes that matter here. When you're taking what happened from Easley's perspective, which is he in fact pulled out a gun. And whether the officer, for whatever reason, why he said threw something and not threw a gun. I mean, the officer explained why he said that. You're saying it's not material enough to create an issue fact for trial. I don't think it is. Right. So how do you respond to Mr. Galiber's argument that if you construe all facts in Mr. Easley's favor, the shot was four seconds after the gun was already tossed? So focusing just on Mr. Easley's testimony, I don't think you even have to accept four seconds. First of all, Easley test Mr. Backup a second here. This chase we know from physical evidence covered about 300 feet from the point where the car was where they started running until where Mr. Easley fell. It lasted 20 seconds. Again, we know that from physical evidence. There's a timestamp on the video from when they start running to shots fired. So 300 feet in 20 seconds. That's about 15 feet per second. Mr. Easley also testified he threw the gun in the last five to 10 feet of the chase. The last five to 10 feet of the chase. You're now under one second before he was shot. And that's Easley's own estimate. So Easley's estimate about distance suggests that actually the shots were much, much closer to the throwing than four seconds. They suggest it was under a second. Mr. Easley also says I threw it two to three seconds before at one place. And one place he says a few seconds, maybe three or four. So that's all Easley's own testimony. And I understand that on summary judgment we take the record in the light favorable to the non-moving party. But here even his own estimate shows that he's not really sure and that it may well have been under a second. It may have been as many as four seconds. It's really hard to estimate time while you're running and you're in the heat of the moment. What does Mr. Easley say about his body position in making the throw? Because I think there's some things that went on there, whether it was torque or if it was. But give Mr. Easley, what does Mr. Easley say? So Mr. Easley demonstrated what he did for the district court and the district court described it. I can tell you that way. But Mr. Easley's own testimony is I was running. I reached across my body. I pulled the gun out with my left hand. I raised it across my body and threw it like a Frisbee. And if you'd like, I can read you the exchange where he was asked about it in front of the district court, which is, at your deposition, you described throwing it maybe like a Frisbee toss, correct? Like this, indicating. And the court says, indicating the arm back, throwing the arm backwards, your left hand back. Mr. Easley says, forward, sir. You threw it forward. And then counsel says, you're showing us with your left hand, yes. With the fingers and thumb pointing towards your body, yes. And you're extending your arm to throw it like people throw a Frisbee, yes. And away from your body going forward, yes. And then the court then, having watched the demonstration, says that Easley reached into his right pant pocket with his left hand, raised the gun across his body and threw the gun forward. If you're an that didn't yield to lights and sirens, that drove through a crowded parking lot, skidding around people, hop out, you're holding something at your waistband in a way that the officers think is a gun. Now you're running and now you're pulling it out of your pants with the officer 10 to 20 feet behind you. He doesn't know you're going to throw it. Ms. Rotter, let me ask you about the trial court here. I have Judge Hatter saying there's no evidence he didn't see the profile of the gun. My record shows that 246 to 248 of the excerpts, the cross-examination of Macias says that he did not see the profile of the gun. Isn't that a fact that's material? I don't have that page of the testimony with me, so I can't see exactly what he said. But he definitely testified that he saw something. He said he saw a profile of a gun. It may be that I'm crossing, I can't, again, I'm sorry, I don't have that page in front of me. But can I just add that I don't think that would necessarily be material. Again, when you have the undisputed fact of what was actually happening to this officer in the moment, whether he knows for sure that's the profile of a gun or not, he knows that he thought the suspect was armed. He knows that if makes a mistake, the police officer could very well end up dead. And we're on qualified immunity where even a reasonable mistake of fact is excused. How does it, how do you factor in, Eastley admits he had a gun, but that he threw it. All right, how does the fact that we, in fact, it's undisputed that the object was a gun, can that be considered at all since I hear you saying we don't need to consider that, but is that part of the factual that it's undisputed that it was a gun? Say, would the hypothetical be different if he threw, it turns out he didn't have a gun and he threw a dope, let's say, but he threw a dope. Right. Would that make this closer to? It's possible, but I think the relevance here of the fact that it's undisputed that it was a is that when you have the officer having run behind him and also thinking it was a gun, you've got the officer's perception matching up with reality, which I think, I think does put a thumb on the scale in favor of the officer and in favor of qualified immunity here because you were talking before about what the rule would be if you were to hold in this case that, in fact, this was unconstitutional and you would be adopting a rule that even when the suspect actually had a gun and actually could have shot him instead of throwing it, the officer still is not entitled to shoot and can be subject to monetary damages because it takes him a second to realize what was going on and his shot is not, you know, is too late. He's got to wait until basically, you know, he's got to either shoot while the gun is there and if you miss your window by a fraction of a second, a second, whatever the rule is that would come out of this case, then you're liable and that's not enough of a cushion for an officer on the scene. And again, because this actually was a gun, this wasn't a mistake, you know, this wasn't a water balloon, this wasn't dope, this was, this was the gun that he's, that the officer perceived it to be the minute that they started this chase and that he thought it was when it came out. Ms. Rotter, the trial court held that there was a genuine dispute as to the timing of the, was four seconds at the outset, two seconds before he shoots after he sees the gun go, right? Am I correct? Well, the court thought it didn't matter. I'm sorry? Judge Hatter thought that that was not a material dispute. Right. Why isn't that material? Again, because first of all, Easley's own testimony, the two seconds is not the officer's testimony, even the low end of that range. But Judge Hatter can't make credibility findings. He has to take. Right. But I'm saying, but we're, I'm sorry, I'm sorry. No, no, that's all right. Go ahead. I don't think it's a credibility to finding because you're not saying this witness was or was not credible. You're saying this witness's own version of events is two to four seconds. The jury's not going to make a credibility determination within Mr. Easley's own testimony. Well, your answer needs to be that even that four seconds is what we go by and four seconds still entitles the officers to qualified immunity. I do think that's true. I thought your answer was that it's not four seconds because there's subjective corroborative evidence that it's much less than four seconds. Well, that's why I was starting with the, it's not a credibility determination between two and four seconds. Thank you, Judge Winn. I don't think that's a credibility question. I think my point is that Easley's own testimony corroborates a much shorter time. But yes, Judge Callahan, I also agree that four seconds would still not make this a situation where you would deny qualified immunity. Again, the Supreme Court has been very clear recently, as has this court in its precedence. When you're looking for clearly established law, you need a case where an officer acting under similar circumstances has been held to have violated the Fourth Amendment. And there's not even a case with a four-second lag with a running chase and pulling out a gun after fleeing from the officer in a car. There is no such case. Plaintiff hasn't cited one and it's plaintiff's burden to identify one. So even four seconds, you're still not in the realm of clearly established violation. Ms. Ryder, you don't need a case specifically, quote, on all fours. I mean, characterization by the Supreme Court of what you need, Pills v. Hope, the 11th Circuit case about prison conditions, you got to have something close. This is a clearly excessive force case going back to Gartner, isn't it? The Supreme Court has also been very clear that Gartner and Graham do not constitute clearly established law that on every excessive force case. It's still particularly in the Fourth Amendment context. Well, we've been criticized for being too general. Yes. And lately, you've been much more specific. So you have, I send a 28-J letter, but lately the SB case, the Schaefer case and the Sharp case, three times very recently, you have emphasized it's not just defining a reasonableness at a high level of generality, it's on in this factual context. And the Supreme Court has said, particularly in the Fourth Amendment context. White v. Pauley recently, an officer acting under similar circumstances violated the Fourth Amendment as the requirement. So whatever the case was in Hope or maybe in a prior era, the current standard as the court is applying it, even in Wesby a couple of weeks ago, is very fact-specific. Ms. Ryder, would you write me a 28-J letter, the panel, a 28-J letter? Why isn't this Kurnow, Xrel, Kurnow v. Ridgecrest Police, 952 Fed 2nd, 321 at 324. Ninth Circuit fairly informs officers of the constitutionality of the use of deadly force in circumstances analogous to the present case. This is my law clerk. He's a lot smarter than I am. Your Honor, I would be happy to write the court a letter. I will take a quick stab at it right now if you want me to. But in Kurnow, the suspect was in a building. He was sitting on the ground and taking his version of facts. There was a gun somewhere else. He had someone on his lap and there was a gun somewhere else when he was shot. That's not a case where there is a running pursuit after a car pursuit and someone is pulling out a gun and tossing it. I withdraw my request. You read the case. I'd have more time. Maybe I shouldn't have answered it. I'd have more time to explain it in the letter. But that's Kurnow. Okay. Would the court still like a letter on that? No, unless my colleagues do. We'll notify you if we want any further briefing. I would say we can read the cases ourselves. If there are any other questions I can answer, I will. But I just again want to go back to the exacting standard that the Supreme Court is requiring these days on clearly established qualified immunity prong that it is plaintiff's burden to establish, to point out such a case, that there is no case with a pursuit like this, even with a four-second gap. This probably comes from my background on handling summary judgment on 1983 cases. But I think there's a great temptation when you have a two-day in-person hearing like Judge Hatter did to make credibility findings. And the temptation to do that when you're watching witnesses and hearing witnesses. I've never seen this procedure on a 1983 case. Is this the way it normally works in your district? I'm an appellate lawyer. So I'm not in the trenches all the time. But I would say that this was probably not your everyday procedure. I would agree with you. I don't think I've seen it before. But again, regardless of whether Judge Hatter made credibility findings, this court's review is essentially de novo. And we've talked about what the evidence is. And as Judge Wynne pointed out, Easley's own corroborating evidence and the physical evidence about what the time was. Judge Callahan's point, or question to me rather than a point, I suppose, is even at four seconds. So even all inferences in favor of Easley, there is no material credibility dispute here to resolve. No fact dispute. Even Easley's version of events is that he ran away dark street, fast chase, pulls out a gun and throws it in a shot within maybe less than a second, maybe four seconds. To deny qualified immunity in this situation would be extraordinary. There is no case law on point that would justify it. All right. You've used your time. Thank you for your argument. First of all, I think the Kernel case and your smart clerk is right on point. Because Kernel and a whole series of cases say that identifying a weapon in someone's hand is not enough to shoot. And Kernel and other cases are where the weapon's pointed down, but in the hand or not pointed at the officer, that is not enough to shoot. I think to... But why isn't that distinguishable from this situation? Well, Kernel's facts were much stronger for the defense than this fact, because in that case, they identified the object as a gun. Here, you don't have it. And he didn't drop the object... But was it pointed at the officer? No. So that case, in many cases, to say there has to be a case in all points almost... Well, what is your best case? Tell us. I mean, clearly established says the Supreme Court has chastised the Ninth Circuit for being too general, that you have to state it with some particularity to put an officer on notice. So what is your best case? I think Kernel is one of the best cases, but there's other similar cases we cited in our brief. I think what's really important here is the officer did not perceive the object as a gun. The mention of a gun, which is disputed, by the way, happened by the fellow officer when Mr. Easley was getting out of the car. And he was a passenger, not the driver of the car, as you know. Then you have the pursuit. So it was not as if at the time of the shooting, someone yelled out, gun. Well, that's the second pursuit, because you have first the car pursuit, then you have the running pursuit. The short vehicle pursuit where he's not driving, correct. But think about it. This is where you get to use some circumstantial evidence or common sense. If he had recognized the object as a gun, whether it was or wasn't, if he perceived it as a gun, his own testimony admits, I would have told the fellow officers arriving on scene, hey, I think he threw a gun. We better look for a gun. The reason I said he threw something, I didn't know what it was. So just because he comes to an evidentiary hearing, which I've never seen in 28 years, Your Honor, on an MSJ, just because he comes to an evidentiary hearing and on direct examination, he gets to say, I thought it was a profile of a gun. And then on cross-examination admits that he never specifically saw a gun. This is a case where qualified immunity should not be granted. I personally think, although I understand the directives of the Supreme Court, now the pendulum is swinging back in a dangerous way where cases that have factual disputes and credibility determinations are being taken away from federal juries. And the counsel says, well, there's no case on point. I guess there's no case that someone dropped it six seconds before, eight seconds before, or 10 seconds before. That doesn't mean it's not clearly established. Even their officers based on their own training said they knew even if they identified a weapon, if it was dropped, you can't shoot someone. So the four seconds is very important. And really, to fairly look at this without making credibility determinations, you have to assume two facts. Number one, the officer did not recognize the object as a gun. And two, he saw the object thrown four seconds before he shot him. So who asked for a hearing on this? Well, that's the crazy part. We met and conferred with counsel. They asked if we would drop a few of the claims so that they, in exchange, they wouldn't file an MSJ. They didn't even think they could get qualified immunity. And then it's set for trial. And Judge Hatter said, why don't we have an evidentiary hearing? And nobody even really knew what the confines of that was going to be. Defense counsel had been practicing law for 40 years. And a friend of mine, and we were both scratching our heads, what is this going to be? Okay, I get it. Okay, that's... Yes. So you're over time, but why don't you wrap up in a minute? Okay, thank you very much. So I would say this. Do officers have difficult jobs? Yes. Sometimes they have to make split-second decisions. I get all that. But in this case, on this record, if you're going to assume the plaintiff's facts as true, qualified immunity should not have been granted. I do agree that Judge Hatter, because he had an evidentiary hearing, may have been tempted to weigh evidence and judge credibility. And we all know that's not what you're supposed to do specifically for a summary judgment. And I think it would be hard to say, if the officer didn't recognize the object or think it was a gun, because that's a reasonable conclusion when he doesn't tell anyone, hey, look for a gun. I think he threw a gun. And it was tossed four seconds before he shot him. It's hard to say as a matter of law, that's okay. And I would submit that although this can go either way in front of a jury, the right thing to do is for your honors to reverse the ruling. Qualified immunity should not have been granted, assuming all plaintiff's facts as true. All right. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Nguyen, Pratt